By the Court—Monell, J.
There can be no doubt, from the evidence in this case, that Simes intended to make a gift to his wife of the two promissory notes. The circumstance of his taking the notes payable to the order of his wife, would of itself sufficiently indicate the intention *320 to make the gift. But if this were not so, the evidence of Sirs. Simes, which was not objected to, and which is nowhere contradicted, relieves the case from any doubt on that subject. She testifies to his declared intention to make the gift, and the adoption of the particular form in svhich it was made, was as effectual to consummate his design as if it had been given to her out and out by his will.
Had the notes been delivered to her by her husband, and continued in her actual possession until his death, no one would question the completeness of the gift, or that she could hold them as against his representatives.
The Justice has found, as a fact, that the notes continued in the possession of Simes until his decease, and that after his decease they came into the possession of the defendant by finding.
The question, then, to be determined, is whether the continued possession of the notes by the husband, during his life and until his death, prevented the gift from taking effect.
There never was any actual delivery of the notes to the defendant during the life of her husband, unless the delivery testified to by the witness Huffer can be so considered. They were taken by Simes, the consideration moving from himself, and were always in his custody. He could, at any time, have received the money and discharged the obligation, or he might have prosecuted the maker and collected the amount. Had he done so, the money would have been absolutely his, and his wife could have had no claim whatever upon him, or upon his representatives. But he did not do so. He exercised no exclusive act of ownership over the notes, but suffered them to remain intact, merely receiving the accruing interest to a period shortly previous to his death.
The possession by the husband of the wife’s choses in action is the possession of the wife. At law they are one person, and the possession of herself is always that of the husband. (McNeill v. Arnold, 17 Ark., 154; Lee v. Matthews, 10 Ala., 682.)
*321 No actual delivery to the defendant was necessary to constitute it an executed gift. The taking the security in her name constituted the gift, and its retention in his custody was a delivery to her.
In Wilde v. Wilde, (cited in 1 Bright’s H. & W., 32,) Lord Elder said, the purchase of stock by the husband, in the joint names of himself and wife, was prima facie a gift to her in the-event of her surviving, unless evidence was produced of eotemporaneous acts, showing a contrary intention. And Bright says, (p. 32,) the wife may take from the husband, by purchase made by him in her name, or in their joint names, which will be presumed to have been intended as a gift and advancement to her, and on surviving her husband she will be entitled.. (Kingdome v. Bridges, 2 Vein., 67; Glaister v. Hewer, 8 Ves., 199.)
In Day v. Pargrave, (cited in 2 Maule & Sel., 396,) Lee, Ch. J., held that when a bond was given to the wife during coverture, no action will lie for it by the wife solely; but they may have a joint action during their lives, or the husband may bring such action during coverture in his own name; yet if he does not, it survives to the wife.
In Gaters v. Madeley, (6 Mees. & W., 423,) a promissory note was given to the wife during coverture. Parke, B. says: “When a chose in action, such as a bond or note, is given to a feme covert, the husband may elect to let his wife have the benefit of it; or if he thinks proper, he may take it himself; and if, in this case, the husband had in his lifetime brought an action upon this note in his own name, that would have amounted to an election to take it himself, and to an expression of dissent on his part to his wife’s having any interest in it. On the other hand, he may, if he pleases, leave it as it is, and in that case, the remedy on it survives to the wife.”
In Scarpellini v. Atcheson, (7 Adol. & El., N. S., 864,) the plea was that the note was given to the wife, and that the husband “ elected to take and have the said note in his marital right.” On demurrer, it was held that it was to be considered rather as the legal conclusion from the *322 facts stated, than as an averment sufficient in itself, and the plea was overruled.
In Christ's Hospital v. Budgin, (2 Vern., 683,) the husband had lent out money in the names of himself and wife, upon bond and mortgage taken in their joint names, and she was regarded as a joint purchaser and entitled to the securities by survivorship.
In Dummer v. Pitcher, (5 Simons, 35,) the husband transferred two sums of bank annuities into the names of himself and wife, and died in her lifetime. It was held that , the wife surviving her husband became absolutely entitled to the stock, there being nothing to show that the husband intended that the transfers should have any operation but what they legally had.
In Nash v. Nash, (2 Mad. C. C., 133,) the father of a married woman had drawn a check on his bankers for £10,000, in favor of his daughter, which she presented at the bank and took from them a promissory note for the sum, payable on demand, and gave it to her husband. He afterward applied to the bankers for £1,000 of the money, which was paid to him, and he received the interest on the remainder during his life, but never was paid any more of the principal. He died and his wife survived him. A bill was filed praying that the'£9,000 might be declared to be part of his personal estate, but the Vice Chancellor held that the note survived to the wife.
In Roman Catholic Orphan Asylum v. Strain, (2 Bradf., 34,) the husband deposited $1,400 of his own money, and took a certificate of deposit in the joint names of himself and wife. This was held to be prima facie a gift by the husband to the wife, in case she survived him, and that not having been disturbed in his lifetime, it became, on his decease, the absolute property of the wife.
All the cases to which we have here referred, clearly establish the right of the wife to take by survivorship, in cases where the security is taken in the joint names of the husband and wife. One of them, Nash v. Nash, and the *323 text from Bright’s H. & W., applies the same rule where the security was taken in the name of the wife alone.
It would be difficult to discover a difference between the two cases. Where the husband, intending to make the gift, takes the security in her name, instead of their joint names, it furnishes stronger and more satisfactory evidence of the intention; and the fact that it remained undisturbed by him, is proof of the irrevocability of the gift, he not having done any act tending to defeat the right of the wife to an absolute property in the notes after his death. The receipt of the accruing interest by the husband was not an appropriation of the principal. In Burr v. Sherwood, (3 Bradf., 85,) it was held that the receipt of dividends on stock standing in the name of the wife, only reduces the dividends into possession, and not the stock. And see Nash v. Nash, (supra.)
Upon a full consideration of the facts in this action and of the cases to which I have referred, it appears clear to me that this was a gift to the wife; that the delivery, so essential to a valid gift, was complete; that the possession by the husband was the possession of the wife, and that he not having done any act signifying a different intention, or by which he revoked the gift and regained the property, upon his death the notes became absolutely her’s.
Upon this view, it follows that the learned Justice erred in his conclusion that the plaintiff was entitled to a return of the notes, or to a judgment for their amount.
The judgment should be reversed, and a new trial ordered, with costs to abide the event.
Robertson, J.
The civil status of a married woman is not lost, but only in abeyance during marriage. In equity she always could have' a separate status from her husband’s ; and she now has, at law, in this State. Husbands, in equity, have always been capable of being trustees for their wives, and contracts could always be made with married women jointly with their husbands, or separately, to be enforced by their husbands during the marriage, or by *324 the wife afterward. Thus in Day v. Pargrave, (cited in 2 Maule & Selw., 396,) Ch. J. Lee held that an action on a bond to a wife survived to her after her husband’s death. In Gaters v. Madeley, (6 Mees. & W., 423,) Parke, B., held the same doctrine in regard to a promissory note to a wife In Scarpellini v. Atcheson, (7 Ad. & El., N. S., 864,) a plea of an election by a husband to take a note to his wife in his marital right, was held bad. In Christ’s Hospital v. Budgin, (2 Vern., 683,) a bond to a husband and wife was held to survive to the wife. In Nash v. Nash, (2 Mad. C. C., 133,) a promissory note to a married woman was held to survive to her, though she had delivered it to her husband, and he had received part of the sums due on it and interest to his death. In Roman Catholic Orphan Asylum v. Stiam, (2 Bradf., 34.) a certificate of deposit in favor of a husband and wife, was held to survive in favor of the latter.
These cases show that a married woman is not disabled from being the beneficiary of a promise during coverture; she is merely a promisee for her husband’s benefit during his life, if he chooses to enforce it. But if he neglects to do it, the moment she becomes sui juris by the termination of the matrimonial relation, she can enforce her rights in her own name.
It is by force of the form of the contract in such cases, that the married woman is entitled, after her husband’s death, to the performance of it in an action at law, and not by virtue of any supposed assignment of it by her husband to her. The doctrine of gifts of chattels or choses in action in his name, is entirely different. In such cases equity must step in to enforce and complete an imperfect gift. Where a complete trust and trustee is created by a writing, there can be no doubt that, if a married woman is the cestui que trust, she has a right to the proceeds, but the action must be in the name of the trustee.
In the case of an executed transfer of stock or chattels, it may be necessary to have recourse to the presumption of an intended gift by the husband, by taking it in the joint names of himself and wife. (Per Ld. Elden in Wilde *325 v. Wilde, cited in 1 Bright, Hus. & W., 32; Kingdome v. Bridges, 2 Vern., 67; Glaister v. Heever, 8 Ves., 99; Dummer v. Pitcher, 5 Simmons, 35.) An executory contract by its mere form survives to the wife, when made in her name, or the joint names of herself and her husband.
There was but one mode of putting an end to the wife’s right, which was by the husband’s reducing the chose in action into possession in his life. The receipt of the mere interest is not sufficient for the purpose. (Burr v. Sherwood, 3 Bradf., 85; Nash v. Nash, ubi sup.)
I concur in the view that judgment should be given for the defendant, with costs.