NEW YORK COUNTY.—HON. RASTUS S. RANSOM, SURROGATE.—November, 1888.

·MATTER OF ALBRECHT.

*In the matter of the judicial settlement of the account of* CHRISTIAN J. UHL *and* CHARLES H. HAMEL, *executors of the will of* BALTHASER ALBRECHT, *deceased.*

Personal property owned jointly by husband and wife, *e. g.* a bond and mortgage, at the death of one belongs to the survivor, and forms no part of the estate of the deceased.

Where an offer of compromise of a claim was made to executors and by them rejected, they will not, where they acted in good faith and with reasonable prudence, be charged with the excess over the amount offered in compromise recovered by the claimants against the estate and the expenses of the litigation.

EXCEPTIONS by the residuary legatees to the report of referee on a final accounting of executors.

HENRY F. LIPPOLD, *for* ANNIE D. LINDERMANN *et al., objectors.*

JAMES P. NIEMAN, *for* KATHARINA ALBRECHT *et al., objectors.*

JOS. E. NEWBURGER, *for* JACOB VETTER *et al., objectors.*

GUGGENHEIMER & UNTERMYER, *for* LOUISA UHL *et al.*, *objectors.*

LEONARD A. GIEGERICH, *for executors.*

I. THE executors cannot be called upon to bear the loss that has arisen from their litigating a claim in dispute in the *bona fide* exercise of a reasonable discretion because the conclusion they came to turned out unfortunately : Buxton v. Buxton, 1 *Mylne C.* 95 ; Weston v. Ward, 4 *Redf.* 415 ; Matter of Gray, executors of Weston, 27 *Hun* 455, s. c. 91 *N. Y.* 502.

II. The bond and mortgage in question being jointly owned by the deceased, Balthaser Albrecht, and Margaretha Albrecht, his wife, at the time of the death of said Balthaser Albrecht, his widow as against the representatives of the husband took and became the absolute owner in her own right in the bond and mortgage as survivor. The principle of Bertles v. Nunan, 92 *N. Y.* 152, applies to this case. And the contention of the executors is supported by the cases cited below.

In Christ's Hospital v. Budgin, 2 *Vernon* 683, the husband had loaned out money in the names of himself and his wife upon bonds and mortgages taken in their joint names. The Lord Keeper regarded the wife as a joint purchaser, and as entitled to the securities by survivorship.

In Dummer v. Pitcher, 5 *Simon* 35, testator before making his will transferred two sums of bank annuities in the names of himself and wife, and afterwards bequeathed all his funded property to trustees. He subsequently purchased further sums in the stocks in the names of himself and wife and died in her lifetime, having no stock except the above mentioned,

exclusive of which his property was not sufficient to pay his legacies. It was held by LANCELOT SHADWELL, and affirmed on appeal by Lord BROUGHAM, that the wife by surviving her husband became absolutely entitled to the sums of stock, there being "nothing to show that the husband intended that the transfer should have any operation but what they legally had."

In Coates v. Stevens, 1 *You. & Coll. Exch.* 66, the testator bequeathed £2,200 stock, his property standing in the joint names of himself and wife, and Lord ABINGER held that the stock was the absolute property of the surviving wife. In that case the authorities were copiously cited and among them Lord ELDON's decision in Wilde v. Wilde when he said that the purchase of stock by the husband in the joint names of himself and wife was *prima facie* a gift to her in the event of her surviving, unless evidence was produced of contemporaneous acts showing a contrary intention.

In Craig v. Craig, 3 *Barb. Ch.* 76, it was held that stocks owned by husband and wife jointly at the time of the husband's death go to the wife by survivorship.

In Roman Catholic Orphan Asylum v. Strain, 2 *Bradf.* 34, the husband deposited money and took a certificate that the money had been deposited by himself and wife. He died without withdrawing the deposit. Surrogate BRADFORD held that as against the representatives of the husband, she took the deposit as survivor.

In Sanford v. Sanford, 45 *N. Y.* 723; 58 *N. Y.* 72, the decedent died in 1866, leaving the plaintiff his widow. In 1864, he had loaned to the defendant, who

was one of his sons, $5,000 of his own money and taken from him a promissory note therefor, with interest payable to the order of Joseph H. and Maria Sanford, and the court held that the wife was entitled to the note upon her surviving her husband.

In Matter of Brooks, 5 *Dem.* 336, Surrogate ROLLINS followed the case, Roman Catholic Orphan Asylum v. Strain, *supra*, to the effect that a deposit of moneys in the joint names of husband and wife with the privity of the husband must be taken as *prima facie* a gift of such moneys to the wife in the event of her surviving her husband ; that when such deposit had been left undisturbed by the husband, the moneys became, on his decease, the property of his wife.

The doctrine of the case just cited was recently reaffirmed by the Supreme Court in Platt v. Grubb, 1 *St. Rep.* 494. The moneys on joint deposit which were there held to have become the property of wife at the death of her husband were distinctly found to have belonged before the making of such deposit, to husband alone.

There is nothing at variance with the principles governing Sanford v. Sanford, 45 *N. Y.* 723, 58 *N. Y.* 72, with the decisions of Mulcahey v. The Emigrant Industrial Savings Bank, 89 *N. Y.* 435 ; Gelster v. Syracuse Savings Bank, 17 *Week. Dig.* 137, or Syracuse Savings Bank v. Hess, 23 *Week. Dig.* 280.

THE SURROGATE.—But two questions arise :

First. The executors litigated a claim in dispute, in which an offer of compromise had been made, and the judgment recovered exceeded in amount the offer ;

they are sought to be charged with the amount of such recovery in excess of the compromise offered, together with the expenses of the litigation. The referee has decided that the executors acted in good faith and with reasonable prudence, and his finding is sustained.

Second. The most important question arises under the following facts : A bond and mortgage had been executed by Louisa Uhl to the decedent and his wife. The decedent died before his wife, and the point to be decided is whether or not the bond and mortgage became the property of the wife on the death of her husband by right of survivorship, or whether the estate of the husband was entitled to some portion thereof.

The objectors concede that, in case of real property in the case of a transfer of this kind, the right of survivorship would exist, but claim that a different rule prevails with respect to personal property. The referee held that there was no difference, and cites authorities to sustain his position.

The case of Bertles v. Nunan, 92 *N. Y.* 152, proceeded on the theory that the statutes enlarging the powers of married women with reference to property rights, being in derogation of the common law, must be strictly construed, and that these statutes did not abrogate the common law rule that a conveyance to husband and wife created an estate by the entirety, with the right of survivorship as an incident of that quality of title.

The common law rule as to the right of survivorship was based upon the unity of husband and wife, and a conveyance in the joint names of husband and

wife was presumed to be a gift and advancement to the wife by the husband, unless evidence of a different intention was adduced.

That the case of Bertles v. Nunan, *supra,* is an authority as to the continuance of the common law rule with respect to personal property as well as real estate is apparent from the language of the court, who say : " The claim is made that the legislature referred to and destroyed the common law unity of husband and wife, and made them substantially separate persons for all purposes.   We are of the opinion that the statutes have not gone so far."   Again, the court say : " The statutes had in view the enjoyment of that which is hers, *not the force and effect of the instrument* by which an estate may be granted to her."   Matter of Brooks, 5 *Dem.* 326 ; R. C. Orphan Asylum v. Strain, 2 *Brad.* 27 ; Platt v. Grubb, 1 *St. Rep.* 494 ; Sanford v. Sanford, 45 *N. Y.* 723 ; 58 *N. Y.* 72.

The exceptions to the report of the referee are overruled and the report confirmed.